FILED
2017 Nov-22 PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# ALABAMA SJIS CASE DETAIL



**PREPARED FOR: KATIE TAYLOR**



alacourt.com

County: **50**     Case Number: **CV-2017-900418.00**     Court Action:

Style: **BEN HULGAN ET AL V. STATE FARM FIRE & CASUALTY COMPANY**

**Real Time**

## Case

### Case Information

| | | |
|---|---|---|
| County: **50-MARSHALL** | Case Number: **CV-2017-900418.00** | Judge: **FTR:TIM RILEY** |
| Style: **BEN HULGAN ET AL V. STATE FARM FIRE & CASUALTY COMPANY** | | |
| Filed: **10/18/2017** | Case Status: **ACTIVE** | Case Type: **EQUITY NON-DAMAGE** |
| Trial Type: **BENCH** | Track: | Appellate Case: **0** |
| No of Plaintiffs: **2** | No of Defendants: **1** | |

### Damages

| | | |
|---|---|---|
| Damage Amt: **0.00** | Punitive Damages: **0.00** | General Damages: **0.00** |
| No Damages: | Compensatory Damages: **0.00** | |
| Pay To: | Payment Frequency: | Cost Paid By: |

### Court Action

| | | |
|---|---|---|
| Court Action Code: | Court Action Desc: | Court Action Date: |
| Num of Trial days: **0** | Num of Liens: **0** | Judgment For: |
| Dispositon Date of Appeal: | Disposition Judge: **:** | Disposition Type: |
| Revised Judgement Date: | Minstral: | Appeal Date: |
| Date Trial Began but No Verdict (TBNV1): | | |
| Date Trial Began but No Verdict (TBNV2): | | |

### Comments

Comment 1:

Comment 2:

### Appeal Information

| | | |
|---|---|---|
| Appeal Date: | Appeal Case Number: | Appeal Court: |
| Appeal Status: | Orgin Of Appeal: | |
| Appeal To: | Appeal To Desc: | LowerCourt Appeal Date: |
| Disposition Date Of Appeal: | Disposition Type Of Appeal: | |

### Administrative Information

| | | |
|---|---|---|
| Transfer to Admin Doc Date: | Transfer Reason: | Transfer Desc: |
| Number of Subponeas: | Last Update: **10/18/2017** | Updated By: **AJA** |

## Parties

### Party 1 - Plaintiff INDIVIDUAL - HULGAN BEN

#### Party Information

| | | |
|---|---|---|
| Party: **C001-Plaintiff** | Name: **HULGAN BEN** | Type: **I-INDIVIDUAL** |
| Index: **D STATE FARM F** | Alt Name: | Hardship: **No**  JID: **FTR** |
| Address 1: **C/O MCLAUGHLIN & EDMONDSO** | Phone: **(256) 000-0000** | |

EXHIBIT A

| | | | | | |
|---|---|---|---|---|---|
| Address 2: | **321 BLOUNT AVENUE** | | | | |
| City: | **GUNTERSVILLE** | State: | **AL** | Zip: | **35976-0000** Country: **US** |
| SSN: | **XXX-XX-X999** | DOB: | | Sex: | **M** Race: |

## Court Action

| | | | | |
|---|---|---|---|---|
| Court Action: | | | | Court Action Date: |
| Amount of Judgement: | **$0.00** | Court Action For: | | Exemptions: |
| Cost Against Party: | **$0.00** | Other Cost: | **$0.00** | Date Satisfied: |
| Comment: | | | | Arrest Date: |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: |

## Service Information

| | | | |
|---|---|---|---|
| Issued: | Issued Type: | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Served By: |
| Answer: | Answer Type: | Notice of No Service: | Notice of No Answer: |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | EDM007 | | EDMONDSON RODNEY LAVON | RODNEY@MCEDLAW.COM | (256) 582-2520 |
| Attorney 2 | MCL022 | | MCLAUGHLIN JEFFREY REX | JRM@MCEDLAW.COM | (256) 582-2520 |
| Attorney 3 | MOS037 | | HICKS LEA MOSLEY | LHICKS@MCEDLAW.COM | (256) 582-2520 |

## Party 2 - Plaintiff INDIVIDUAL - HULGAN TRACI

### Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | **C002-Plaintiff** | Name: | **HULGAN TRACI** | | Type: **I-INDIVIDUAL** |
| Index: | **D STATE FARM F** | Alt Name: | | Hardship: **No** | JID: **FTR** |
| Address 1: | **C/O MCLAUGHLIN & EDMONDSO** | | | Phone: **(256) 000-0000** | |
| Address 2: | **321 BLOUNT AVENUE** | | | | |
| City: | **GUNTERSVILLE** | State: | **AL** | Zip: **35976-0000** Country: **US** | |
| SSN: | **XXX-XX-X999** | DOB: | | Sex: **F** Race: | |

## Court Action

| | | | | |
|---|---|---|---|---|
| Court Action: | | | | Court Action Date: |
| Amount of Judgement: | **$0.00** | Court Action For: | | Exemptions: |
| Cost Against Party: | **$0.00** | Other Cost: | **$0.00** | Date Satisfied: |
| Comment: | | | | Arrest Date: |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: |

## Service Information

| | | | |
|---|---|---|---|
| Issued: | Issued Type: | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Served By: |
| Answer: | Answer Type: | Notice of No Service: | Notice of No Answer: |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|-----------------|------|-------|-------|
| Attorney 1 | EDM007 | | EDMONDSON RODNEY LAVON | RODNEY@MCEDLAW.COM | (256) 582-2520 |

## Party 3 - Defendant BUSINESS - STATE FARM FIRE & CASUALTY COMPANY

### Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | D001-Defendant | Name: | **STATE FARM FIRE & CASUALTY COMPANY** | Type: | **B-BUSINESS** |
| Index: | **C HULGAN BEN** | Alt Name: | | Hardship: **No** | JID: **FTR** |
| Address 1: | **C/CORPORATION SERVICE CO.** | | | Phone: **(256) 000-0000** | |
| Address 2: | **641 SOUTH LAWRENCE STREET** | | | | |
| City: | **MONTGOMERY** | State: **AL** | | Zip: **36104-0000** | Country: **US** |
| SSN: | **XXX-XX-X999** | DOB: | | Sex: | Race: |

### Court Action

| | | | | | |
|---|---|---|---|---|---|
| Court Action: | | | | Court Action Date: | |
| Amount of Judgement: | **$0.00** | Court Action For: | | Exemptions: | |
| Cost Against Party: | **$0.00** | Other Cost: | **$0.00** | Date Satisfied: | |
| Comment: | | | | Arrest Date: | |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: | |

### Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | **10/18/2017** | Issued Type: **C-CERTIFIED MAIL** | Reissue: | Reissue Type: | |
| Return: | | Return Type: | Return: | Return Type: | |
| Served: | **10/25/2017** | Service Type **C-CERTIFIED MAIL** | Service On: | Served By: | |
| Answer: | | Answer Type: | Notice of No Service: | Notice of No Answer: | |

### Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|-----------------|------|-------|-------|
| Attorney 1 | 000000 | | PRO SE | | |

## Financial

### Fee Sheet

| Fee Status | Admin Fee | Fee Code | Payor | Payee | Amount Due | Amount Paid | Balance | Amount Hold | Garnish Party |
|------------|-----------|----------|-------|-------|------------|-------------|---------|-------------|---------------|
| ACTIVE | N | AOCC | C001 | 000 | **$8.55** | $8.55 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CONV | C001 | 000 | **$0.00** | $14.50 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CVAP | C001 | 000 | **$100.00** | $100.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CV00 | C001 | 000 | **$209.00** | $209.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | VADM | C001 | 000 | **$45.00** | $45.00 | $0.00 | $0.00 | 0 |
| | | | | Total: | $362.55 | $377.05 | -$14.50 | $0.00 | |

### Financial History

| Transaction Date | Description | Disbursement Account | Transaction Batch | Receipt Number | Amount | From Party | To Party | Money Type | Admin | Reason | Attorney | Operator |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/19/2017 | CREDIT | CONV | 2018014 | 2432360 | $14.50 | C001 | 000 | | N | | | MIM |
| 10/19/2017 | RECEIPT | AOCC | 2018014 | 2432350 | $8.55 | C001 | 000 | | N | | | MIM |
| 10/19/2017 | RECEIPT | CVAP | 2018014 | 2432370 | $100.00 | C001 | 000 | | N | | | MIM |
| 10/19/2017 | RECEIPT | CV00 | 2018014 | 2432380 | $209.00 | C001 | 000 | | N | | | MIM |
| 10/19/2017 | RECEIPT | VADM | 2018014 | 2432390 | $45.00 | C001 | 000 | | N | | | MIM |

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 10/18/2017 | 10:42 AM | ECOMP | COMPLAINT E-FILED. | EDM007 |
| 10/18/2017 | 10:43 AM | FILE | FILED THIS DATE: 10/18/2017          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | ASSJ | ASSIGNED TO JUDGE: TIM RILEY          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | TDMN | BENCH/NON-JURY TRIAL REQUESTED          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | EXPD | EXPEDITED STATUS DENIED          (AV01) | AJA |
| 10/18/2017 | 10:43 AM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | C001 | LISTED AS ATTORNEY FOR C001: MCLAUGHLIN JEFFREY R | AJA |
| 10/18/2017 | 10:43 AM | C001 | C001 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | C001 | LISTED AS ATTORNEY FOR C001: HICKS LEA MOSLEY | AJA |
| 10/18/2017 | 10:43 AM | C001 | C001 PARTY ADDED: HULGAN BEN          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | C001 | LISTED AS ATTORNEY FOR C001: EDMONDSON RODNEY LAV | AJA |
| 10/18/2017 | 10:43 AM | C002 | C002 PARTY ADDED: HULGAN TRACI          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | C002 | LISTED AS ATTORNEY FOR C002: EDMONDSON RODNEY LAV | AJA |
| 10/18/2017 | 10:43 AM | C002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | C002 | C002 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | D001 | CERTIFIED MAI ISSUED: 10/18/2017 TO D001    (AV02) | AJA |
| 10/18/2017 | 10:43 AM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | D001 | D001 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 10/18/2017 | 10:43 AM | D001 | D001 PARTY ADDED: STATE FARM FIRE & CASUALTY COMPA | AJA |
| 10/21/2017 | 11:24 AM | ESCAN | SCAN - FILED 10/21/2017 - CERTIFIED MAIL | DIH |
| 10/31/2017 | 9:33 AM | ESERC | SERVICE RETURN | EMB |
| 10/31/2017 | 9:33 AM | D001 | SERVICE OF CERTIFIED MAI ON 10/25/2017 FOR D001 | EMB |

   **END OF THE REPORT**

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>50-CV-2017-900418.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, ALABAMA**
**BEN HULGAN ET AL V. STATE FARM FIRE & CASUALTY COMPANY**

**NOTICE TO:** STATE FARM FIRE & CASUALTY COMPANY, C/CORPORATION SERVICE CO. 641 SOUTH LAWRENCE STREET, MONTGOMERY, AL 36104

(Name and Address of Defendant)

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RODNEY LAVON EDMONDSON ,

[Name(s) of Attorney(s)]

WHOSE ADDRESS(ES) IS/ARE: 321 BLOUNT AVENUE, GUNTERSVILLE, AL 35976 .

[Address(es) of Plaintiff(s) or Attorney(s)]

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of BEN HULGAN pursuant to the Alabama Rules of the Civil Procedure.

| 10/18/2017 10:41:32 AM | /s/ CHERYL PIERCE | By: |
|---|---|---|
| (Date) | (Signature of Clerk) | (Name) |

☑ Certified Mail is hereby requested.     /s/ RODNEY LAVON EDMONDSON
(Plaintiff's/Attorney's Signature)

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .
(Date)

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
(Name of Person Served)          (Name of County)

Alabama on _____ .
(Date)

| (Type of Process Server) | (Server's Signature) | (Address of Server) |
|---|---|---|
| | (Server's Printed Name) | (Phone Number of Server) |

ELECTRONICALLY FILED
11/18/2017 10:42 AM
50-CV-2017-900418.00
CIRCUIT COURT OF
MARSHALL COUNTY, ALABAMA
CHERYL PIERCE, CLERK

## IN THE CIRCUIT COURT OF MARSHALL COUNTY, ALABAMA

| | | |
|---|---|---|
| BEN HULGAN and | ) | |
| TRACI HULGAN, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  CV-2017-_____ |
| | ) | |
| STATE FARM FIRE & CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Come now the Plaintiffs in this action, Ben and Traci Hulgan, and hereby file this complaint for a declaratory judgment.

1. Plaintiffs bring this action pursuant to Alabama Code §6-6-220, et. seq., to declare the rights and legal obligations of the parties arising out of the contract for homeowners insurance issued by State Farm, policy number 01-BG-V561-1 (the "Policy").

2. At all material times, State Farm has been engaged in writing policies, and has been duly licensed by the State of Alabama to issue such contracts.  The Policy referenced above is such a policy.

3. The Policy provides homeowners coverage for the residence at 136 Ramsey Drive, Albertville, Alabama (the "Residence").  The Plaintiffs are the residents of the Residence, and have been at all material times, including when the Policy was purchased and put into effect and at all times the Policy has been in effect from April 23, 2015 through April 23, 2016.

4. Plaintiffs Ben and Traci Hulgan fall under the definition of "insured" under the provisions of the Policy since they are relatives of the policy holder living in the Residence:

### DEFINITIONS

4. **"insured"** means you and, if residents of your household:

    a.   your relatives; and
    b.   any other person under the age of 21 who is in the care of a person described above.

Under Section II, **"insured"** also means:

c.      with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them.  However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b.  A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

5. The Policy contains certain additional provisions, including the following language:

## SECTION II – LIABILITY

## COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily        injury** or **property damage** to which this coverage applies, caused by an **occurrence**,     we will:

1.    pay up to our limit of liability for the damages for which the **insured** is legally liable; and
2.    provide a defense at our expense by counsel of our choice.  We may  make any  investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

6. On or about May 10, 2017, Plaintiffs Terri and Doug Dountz filed a Complaint against Ben and Traci Hulgan in the Circuit Court of Marshall County, Case No. CV-2017-900189.

7. The complaint alleges that the Plaintiffs in that case suffered personal injury from a dog or dogs under the care and control of the insureds Hugh and Joyce Burgess and/or Ben and Traci Hulgan.  Traci Hulgan is the daughter of Hugh Burgess, and thus, Traci is Ben's "relative," and she is living in the household of the insured, Hugh Burgess.

8. Plaintiffs herein contend that they should be covered under the Policy under the provisions cited above and or under other provisions.  (The Policy is attached as Exhibit A.) However, on June 22, 2017, State Farm issued a letter denying coverage.  Your plaintiffs herein maintain that there is an actual and justiciable controversy between the parties regarding the rights, duties, and obligations arising out of the Policy and the circumstances involved in this case.  The Hulgans hereby represent that the Court decide the obligations of the parties to the Policy.

## COUNT I

9.   Plaintiffs hereby reincorporate paragraphs 1-8 as if set forth in full herein.

10. Plaintiffs respectfully request that this Court take jurisdictions of the case, and consider the facts and law pertaining to the Policy and issue a decree or declaration that State Farm is obligated to defend the Hulgans and also to provide coverage for the Hulgans in the Suit brought by the Dountzes, CV 2017-900189.

11. The Plaintiffs also respectfully request such further relief as this Court deems appropriate.

Respectfully Submitted,

*/s/ Jeffrey McLaughlin*
Jeffrey McLaughlin (MCL022)
Attorney for Plaintiffs
Ben and Traci Hulgan

Of Counsel:
McLaughlin Edmondson & Hicks, LLC
321 Blount Avenue
Guntersville, Alabama 35976
256-582-2520
jrm@mcedlaw.com

Defendant Address:
State Farm Fire & Casualty Company
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104

Courtesy Copy:
Ms. Shelley Lewis
Gaines Gault & Hendrix, PC
401 Holmes Avenue NE, Suite B1
Huntsville, Alabama 35801-4102
Via email: slewis@ggh-law.com



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.  However, we want to point out that every policy contains limitations and exclusions.  Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Homeowners
Policy**

FP-7955

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . . .   1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**SECTION I - YOUR PROPERTY**
COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . .   3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . .   3
    Coverage B - Personal Property . . . . . . . . . . . . . . . .   3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . . .   4
    Additional Coverages . . . . . . . . . . . . . . . . . . . .   5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . .   7
LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . .   7
LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . .   9
LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . .  11
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . .  13

**SECTION II - YOUR LIABILITY**
COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . .  15
    Coverage L - Personal Liability . . . . . . . . . . . . . . .  15
    Coverage M - Medical Payments to Others . . . . . . . . . . .  15
    Additional Coverages . . . . . . . . . . . . . . . . . . . .  15
EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . .  16
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . .  18

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . . . .  19

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . . .  20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-7955

Printed in U.S.A.

## HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

1

FP-7955

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "**insured location**" means:

   a. the **residence premises**;

   b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

   c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

   d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

   e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

   f. individual or family cemetery plots or burial vaults owned by an **insured**;

   g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

   h. vacant land owned by or rented to an **insured**. This does not include farmland; and

   i. farmland (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor vehicle**;

   c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

   d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

   a. **bodily injury;** or

   b. **property damage;**

   during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "**residence premises**" means:

    a. the one, two, three or four-family dwelling, other structures and grounds; or

    b. that part of any other building;

    where you reside and which is shown in the **Declarations**.

FP-7955

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a.  structures attached to the dwelling;

   b.  materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c.  foundation, floor slab and footings supporting the dwelling; and

   d.  wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a.  not permanently attached to or otherwise forming a part of the realty;

   b.  used in whole or in part for **business** purposes; or

   c.  rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a.  land, including the land necessary to support any Coverage A property;

   b.  any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c.  the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a.  $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b.  $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c.  $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d.  $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e.  $1,000 on trailers not used with watercraft;

3

FP-7955

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

4

FP-7955

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured.**

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

FP-7955

the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

FP-7955

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and space-craft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

7

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, gold-ware, silver, silverware, pewterware, plati-num, coins and medals;

    (c) of securities, checks, cashier's checks, trav-eler's checks, money orders and other nego-tiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, pass-ports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and gar-ments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **resi-dence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is cov-ered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired prin-cipal residence, property in the immediate past prin-cipal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to prop-erty contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or auto-matic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence prem-ises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

FP-7955

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse;**

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

9

FP-7955

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove

subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

FP-7955

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

### COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

      (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

   b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

   a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

      (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or

FP-7955

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1. B1 - Limited Replacement Cost Loss Settlement.

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

### 2. B2 - Depreciated Loss Settlement.

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

FP-7955

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

FP-7955

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

       (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

       (2) pays on demand any premium due under this policy, if you have not paid the premium; and

       (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d. If we pay the mortgagee for any loss and deny payment to you:

       (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

       (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

FP-7955

DOCUMENT 2

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the other part; or

(5) to farmland (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

16

FP-7955

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f.  **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g.  **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h.  **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i.  any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j.  **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a.  liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business of the insured**;

b.  **property damage** to property currently owned by any **insured**;

c.  **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion

FP-7955

does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a. give written notice to us or our agent as soon as practicable, which sets forth:

   (1) the identity of this policy and **insured**;

   (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

   (3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. at our request, assist in:

   (1) making settlement;

   (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

   (3) the conduct of suits and attend hearings and trials; and

   (4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

18

FP-7955

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c.  When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d.  The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a.  sign and deliver all related papers;

b.  cooperate with us in a reasonable manner; and

c.  do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a.  we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b.  **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**,

20

FP-7955

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLU-SIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

    a. clerical office employee, salesperson, collector, messenger; or

    b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

    while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

    a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

    b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

        (1) computer programming, architectural, engineering or industrial design services;

        (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

        (3) beauty or barber services or treatment;

    c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

    d. when the **insured** is a member of the faculty or teaching staff of a school or college:

        (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

            (a) draft or saddle animals, including vehicles for use with them; or

            (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

        owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

        (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. any process of refinishing, renovating, or repairing;

    d. dampness of atmosphere or extremes of temperatures;

    e. inherent defect or faulty manufacture;

    f. rust, fouling or explosion of firearms;

    g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

    h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

21

FP-7955

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension,** item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and

incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS,** item 1.b. of Coverage L and Coverage M is replaced with the following:

b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business;**

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an incidental **business** or private garage;

(4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

FP-7955

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

FP-7955

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

(1) the enforcement is directly caused by the same Loss Insured;

(2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or

land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations.**

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

FP-7955

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yousell*  Secretary     *Michael F. Tipson*  President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955

## FE-3413 HOMEOWNERS POLICY ENDORSEMENT (Alabama)

### DEFINITIONS

Definitions 6. and 7. are replaced by the following:

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

The following are not **motor vehicles**:

   a. a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

   b. a motorized land vehicle in dead storage on an **insured location**;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

   e. a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

   a. **bodily injury**; or

   b. **property damage**;

   during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

Definitions 11. and 12. are added:

11. "**fungus**" means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

12. "**State Farm Companies**" means one or more of the following:

    a. State Farm Mutual Automobile Insurance Company;

    b. State Farm Fire and Casualty Company; and

    c. subsidiaries or affiliates of either a. or b. above.

### SECTION I – COVERAGES

### COVERAGE A – DWELLING

Item 2., **Dwelling Extension**, is replaced by the following:

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

      (1) duties of the **insured's** employment by another; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

CONTINUED

(2) performed solely by the **insured**; or

c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

The following item is added to item 3. **Property Not Covered:**

d. lawns or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES.**

## COVERAGE B – PERSONAL PROPERTY

**Special Limits of Liability** is replaced by the following:

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,500 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

k. $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., **Property Not Covered**, is replaced by the following:

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or other media that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

cost of labor you incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l. purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

m. contraband, or any property used in the course of illegal consumption, possession, import, export or trade; or

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES.**

## COVERAGE C – LOSS OF USE

Item 3., **Prohibited Use**, is replaced by the following:

3. **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;

   b. the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

Items 1., 3. and 11. are replaced by the following:

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. **Trees, Shrubs and Landscaping.**

   b. We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises**, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a Loss Insured to Coverage A property; or

      (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

         (a) the driveway, on the **residence premises**, and prevents land motor vehicle access to or from the dwelling; or

         (b) a ramp designed to assist the handicapped, on the **residence premises** and prevents access to or from the dwelling.

3. **Trees, Shrubs and Landscaping.** We cover outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

   on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A – DWELLING. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I – LOSSES IN-SURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. decay, deterioration, insect damage or vermin damage, all that are hidden from view, of a:

(1) connector; or

(2) structural member of a building;

unless the presence of such damage is known to an **insured** prior to collapse;

c. weight of contents, equipment, animals or people;

d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d. and e. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

## SECTION I – LOSSES INSURED

## COVERAGE B – PERSONAL PROPERTY

Items 9.b.(3)(c), 12.d., 13.b. and 15. are replaced by the following:

9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

12. d. caused by or resulting from continuous or repeated seepage or leakage of water or steam

which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

13. b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,500 under this peril for each damaged item described above.

## SECTION I – LOSSES NOT INSURED

Items 1.i. and 2.c. are replaced by the following:

1. i. wet or dry rot;

2. c. **Water**, meaning:

(1) flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

(4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

The following item is added:

2. g. **Fungus.** We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

(2) any remediation of **fungus**, including the cost to:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

(a) remove the **fungus** from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

## SECTION I – CONDITIONS

Item 6., **Suit Against Us**, reference to "one year" is changed to "six years".

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1.d. are replaced by the following:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend. Taxed costs do not include attorney fees;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

   d. interest the **insured** is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages we pay; or

      (2) the Coverage L limit; and

## SECTION II – CONDITIONS

Item 1., **Limit of Liability**, is replaced by the following:

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

   The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

The following condition is added to item 4., **Duties of an Injured Person – Coverage M:**

d. the injured person, or, when appropriate, someone acting on behalf of that person, shall:

   (1) provide us with any required authorizations; and

   (2) submit to us all information we need to comply with state or federal law.

## SECTION I AND SECTION II – CONDITIONS

Item 8., **Subrogation**, is replaced by the following:

a. If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are automatically transferred to us to the extent of our payment. We are subrogated to the full extent of our payment and our rights are not dependent on whether that **insured** is fully compensated for their loss or is made whole. The application of a deductible under this policy shall not prevent any **insured** from being considered fully compensated or made whole.

b. If any **insured** to or for whom we have made payment has not recovered from any party liable for the damages, that **insured** shall:

   (1) take no action after a loss prejudicing our rights under this contract;

   (2) keep these rights in trust for us;

   (3) sign and deliver any legal papers we need;

   (4) when we ask, take action through our representative to recover our payments;

   (5) cooperate with us in a reasonable manner.

c. If any **insured** to or for whom we have made payment recovers from any other party liable for the damages:

   (1) that **insured** shall hold in trust for us the proceeds of the recovery; and

   (2) that **insured** shall reimburse us to the extent of our payment.

d. Any **insured** may waive in writing before a loss all rights of recovery against any person.

**Subrogation** does not apply under **SECTION II** to **MEDICAL PAYMENTS TO OTHERS** or **Damage to Property of Others.**

The following conditions are added:

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations.**

© Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

b.  The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

c.  The premium for this policy may vary based upon:

(1)  the purchase of other products or services from the **State Farm Companies**;

(2)  the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3)  an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

d.  Your purchase of this policy may allow:

(1)  you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

(2)  the premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

12.  **Right to Inspect.** We have the right but are not obligated to perform the following:

a.  make inspections and surveys of the **insured location** at any time;

b.  provide you with reports on conditions we find; or

c.  recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a.  make safety inspections;

b.  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c.  warrant that conditions are safe or healthful; or

d.  warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

13.  **Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

14.  **Change of Policy Address.** We may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

a.  you; or

b.  the United States Postal Service.

## OPTIONAL POLICY PROVISIONS

**Option BP – Business Property** is replaced by the following:

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option HC – Home Computer** is replaced by the following:

**Option HC – Home Computer.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item i., is increased to be the amount shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

Item 3.c. is replaced by the following:

c.  legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law, if:

(1)  the enforcement is directly caused by the same Loss Insured;

(2)  the requirement is in effect at the time the Loss Insured occurs; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

(3) the legally required changes are made to the undamaged portions of specific dwelling features, systems or components that have been physically damaged by the Loss Insured.

We will not pay for legally required changes to specific dwelling features, systems or components that have not been physically damaged by the Loss Insured.

All other policy provisions apply.

FE-3413

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

## FE-2358 AMENDATORY ENDORSEMENT (Alabama)

### DECLARATIONS CONTINUED

The following is added:

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

### SECTION I – ADDITIONAL COVERAGES

The following is added:

13. **Tear Out.** If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. We will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

### SECTION I – LOSSES NOT INSURED

Item 1.f. is replaced by the following:

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time;

### SECTION I AND SECTION II – CONDITIONS

Wherever located in this policy or any endorsement attached to the policy, item 8. **Subrogation** is replaced by the following:

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to SECTION I – YOUR PROPERTY:

If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. We are subrogated to the full extent of our payment and our rights are not dependent on whether that **insured** is fully compensated for their loss or is made whole. The application of a deductible under this policy shall not prevent any **insured** from being considered fully compensated or made whole. That **insured** must do everything necessary to secure our rights and must do nothing after loss to impair them. But an **insured** may waive in writing before a loss all rights of recovery against any person.

(2) Applicable to SECTION II – YOUR LIABILITY:

If any **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An **insured** must do nothing after loss to impair them. At our request, an **insured** will bring suit or transfer those rights to us and help us enforce them.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

b. **Reimbursement.**

If we make payment under this policy and any **insured** to or for whom we make payment recovers or has recovered from another person or organization, then the **insured** to or for whom we make payment must:

(1) hold in trust for us the proceeds of any recovery; and

(2) reimburse us to the extent of our payment.

All other policy provisions apply.

FE-2358

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>50-CV-2017-900418.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, ALABAMA**
**BEN HULGAN ET AL V. STATE FARM FIRE & CASUALTY COMPANY**

**NOTICE TO:** STATE FARM FIRE & CASUALTY COMPANY, C/CORPORATION SERVICE CO. 641 SOUTH LAWRENCE STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RODNEY LAVON EDMONDSON

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 321 BLOUNT AVENUE, GUNTERSVILLE, AL 35976

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of BEN HULGAN

pursuant to the Alabama Rules of the Civil Procedure.      *[Name(s)]*

| 10/18/2017 10:41:32 AM | /s/ CHERYL PIERCE | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.      /s/ RODNEY LAVON EDMONDSON
*(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

☐ Return receipt of certified mail received in this office on _____

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

in _____ County, _____

*(Name of County)*

7017 1450 0000 6853 5756

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

*(Address of Server)*

_____ *('s Signature)*

_____ *('s Printed Name)*

_____ *(Phone Number of Server)*

50-CV-2017-900418.00
V. STATE FARM FIRE & CASUALTY COMPANY

v.      D001 - STATE FARM FIRE & CASUALTY COMPANY
*(Defendant)*

**SERVICE RETURN COPY**

**USPS TRACKING #**

9590 9402 2183 6193 0323 96

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

CV-17

900418

S4C

• Sender: Please print your name, address, and ZIP+4® in this box•

**Circuit Clerk
Marshall County
424 Blount Avenue, Ste. 201
Guntersville, AL 35976**

FILED

OCT 3 0 2017

CHERYL PIERCE
CIRCUIT / DISTRICT COURT
MARSHALL COUNTY ALABAMA

**SENDER:** *COMPLETE THIS SECTION*

- Complete Items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

STATE FARM FIRE & CASUALTY COMPANY

C/CORPORATION SERVICE CO.

641 SOUTH LAWRENCE STREET

MONTGOMERY, AL 36104



9590 9402 2183 6193 0323 96

2. Article Number *(Transfer from service label)*

7017 1450 0000 6853 5756

PS Form 3811, July 2015 PSN 7530-02-000-9053

---

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

Heather Wheeler

C. Date of Delivery

10-25-17

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... stricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt